UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RAVEN W. W. H., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:22-cv-02176-TWP-MKK |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Raven W. W. H. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1381, *et seq.*

On October 5, 2023, United States District Judge Tanya Walton Pratt entered an Order referring this matter to the undersigned for a report and recommendation regarding the appropriate disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 16). For the reasons set forth below, the undersigned recommends that the Commissioner's decision denying the Plaintiff benefits be **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

On March 15, 2021, Raven protectively filed an application for DIB and SSI. (Dkt. 10-2 at 191-204, R. 191-204). Raven alleged disability resulting from a broken

1

left femur, left knee damage, damaged right shoulder, herniated disk, comprehension issues, depression, anxiety, psychosis, stomach and gastrointestinal issues, "damage to left wrist - plate due to motorcycle accident," and "damage to right inner hip joint due to car accident." (*Id.* at 220, R. 220). The Social Security Administration ("SSA") denied Raven's claims initially on July 22, 2021. (*Id.* at 123-31, R. 123-31). The denial informed him of his right to appeal. (*Id.*). The SSA denied Raven's claims again on reconsideration on October 21, 2021. (*Id.* at 134-40, R. 134-40).

Raven filed a written request for a hearing. (*Id.* at 141, R. 141). On March 14, 2022, a hearing was held before Administrative Law Judge ("ALJ") Gregory Smith, where Raven, appearing *pro se*, and vocational expert Michelle Peters-Pagella appeared telephonically. (*Id.* at 40, R. 40). On March 25, 2022, the ALJ issued an unfavorable decision finding that Raven was not disabled. (*Id.* at 19-37, R. 19-37). The "Notice of Decision" advised Raven of his right to appeal and the time limits for doing so. (*Id.* at 19-20, R. 19-20). On October 26, 2022, the Appeals Council dismissed Raven's request for review as untimely, making the ALJ's decision final. (*Id.* at 1-5, R. 1-5). Raven now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 1383(c)(3).

## II.    STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable

2

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that he is not able to perform his previous work and, based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a).[1] The ALJ must consider whether:

> the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. "If a claimant satisfies steps one and two, but not three, then he must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). "Once step four is satisfied, the burden shifts to the SSA to establish that the

---

[1] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to supplemental security income benefits. Often, as is the case here, the parallel section pertaining to the other type of benefits—in this case disability insurance benefits—is verbatim and makes no substantive legal distinction based on the benefit type. *See* 20 C.F.R. § 404.1520(a).

claimant is capable of performing work in the national economy." *Id.*; *see also* 20 C.F.R. § 416.920. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of her age, education, job experience, and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(g).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence and free of legal error. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to

determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks and citations omitted); *see also Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Raven is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence and free of legal error. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). "Nevertheless, [the Court must] conduct a 'critical review of the evidence' before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v.*

5

*Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citation omitted); *see also Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford,* 227 F.3d at 872.

### III. BACKGROUND

#### A. Factual Background

Raven was 38 years old on the date his application was filed. (Dkt. 10-2 at 191, R. 191). He has a general equivalency diploma or GED. (*Id.* at 221, R. 221). He has past relevant work history as a laborer, packer, and quality associate. (*Id.*; *see also id.* at 30, R. 30 (quality assurance inspector, packer, machine operator, tire technician, automobile mechanic, and automobile detailer)).

#### B. ALJ Decision

In determining whether Raven qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and 416.920(a) and concluded that Raven was not disabled. (Dkt. 10-2 at 22-32, R. 22-32). At Step One, the ALJ found that Raven had not engaged in

substantial gainful activity since the alleged onset date of October 16, 2020. (*Id.* at 24, R. 24).

At Step Two, the ALJ found that Raven had severe impairments of post left femur and left wrist fractures, degenerative joint disease of the right hip and right shoulder, and degenerative disc disease of the thoracic spine. (*Id.*). The ALJ also found that Raven had mild left tibial motor neuropathy and mild right carpal tunnel syndrome which he concluded were non-severe. (*Id.* at 25, R. 25). The ALJ further concluded that Raven had non-severe mental impairments, *i.e.*, anxiety and depression. (*Id.*). The ALJ considered the "paragraph B" criteria and concluded that Raven had "no more than 'mild' limitation in any of the functional areas" of understanding, remembering, and applying information; interacting with others; concentrating, persistence, or maintaining pace; or adapting or managing oneself. (*Id.*).

At Step Three, the ALJ found that Raven's impairments, alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 26, R. 26). He specifically considered Listings 1.00C6, 1.00E4, 1.15D, 1.16D, and 1.18D. (*Id.*).

After Step Three but before Step Four, the ALJ found that Raven had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) "with the following additional limitations: frequent overhead reaching with the right upper extremity; frequent handling with the left upper extremity; occasional climbing ramps and stairs, but never ladders, ropes, and scaffolds; occasional

7

balancing, stooping, kneeling, crouching, and crawling; no work at unprotected heights, around moving mechanical parts, or in vibration." (Dkt. 10-2 at 26, R. 26).

At Step Four, the ALJ concluded that Raven was capable of performing his past relevant work as a quality assurance inspector. (*Id.* at 30, R. 30). In the alternative, the ALJ found that, considering Raven's age, education, work experience, and RFC, he could perform jobs that existed in significant numbers in the national economy, namely, assembler, hand packer, sorter, and bench packer. (*Id.* at 30-31, R. 30-31). Thus, the ALJ concluded that Raven was not disabled. (*Id.* at 31, R. 31).

## IV. ANALYSIS

Raven proceeds *pro se* in this matter. In his two-page brief in support of his complaint, Raven appears to present two arguments. First, he asserts that he "never received" the ALJ's ruling which resulted in his "untimely appeal to the Appeals Council." (Dkt. 13 at 1). (Although Raven raises this issue in his "Statement [of] Facts" section, the Court will interpret this as an argument for remand.) Next, Raven argues that the medical records on which the ALJ relied in rendering his decision were inaccurate and/or incomplete. (*Id.* at 1-2). Because of this inaccuracy and/or incompleteness, Raven argues that there is "no way the Administrative Law Judge could have made an accurate decision." (*Id.* at 2).

In a request for review, the plaintiff's burden is "to identify some aspect of the ALJ's decision that is not supported by 'substantial evidence.'" *Brown v. Kijakazi*, Nos. 21 C 4115 & 21 C 4118, 2022 WL 20288615, at *1 (N.D. Ill. Aug. 3,

8

2022); *see also Wells v. Astrue*, No. 10-cv-1292, 2011 WL 6140651, at *2 (C.D. Ill. Dec. 9, 2011) ("[t]he Court is not obliged to scour the record on Plaintiff's behalf, looking for problems with the ALJ's determination; Plaintiff must point to specific problems with the ALJ's decision."). The court cannot and will not make a plaintiff's arguments for him. Nor will the court "scour the record and the law for possible errors or to find support for conclusory assertions or arguments." *Jones v. Colvin*, No. 1:13-cv-02021-SEB-DKL, 2015 WL 1097398, at *4 (S.D. Ind. Mar. 10, 2015); *see also Jeffers v. Comm'r of Internal Revenue*, 992 F.3d 649, 653 (7th Cir. 2021) ("We will not scour the record in an attempt to formulate a cogent argument when [the plaintiff] has presented none.") (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

While it is true that *pro se* filings are given more leniency than counsel-drafted filings, the law still demands that a *pro se* litigant "present cogent cases that are both legally and factually developed." *Jones*, 2015 WL 1097398, at *4; *see also Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (*pro se* litigants must present cogent arguments to the court); *Alexander K. v. Kijakazi*, No. 20 C 5819, 2021 WL 4169570, at *8 (N.D. Ill. Sept. 14, 2021) (*pro se* litigants are required "to present a cogent legal argument with citations to authority and relevant parts of the record") (quoting *Greenwell v. Saul*, 811 F. App'x 368, 370 (7th Cir. 2020)).

With these principles in mind, the Court turns to Raven's two arguments: the first procedural in nature, and the second more substantive.

9

### A. Denial of Appeal as Untimely

Raven appears to request remand on the basis that the Appeals Council erred in denying his appeal as untimely. (Dkt. 13 at 1). The standard for reviewing such a claim is abuse of discretion. *Arthur F. v. Comm'r of Social Security*, No. 1:19-cv-1187, 2021 WL 950634, at *3 (C.D. Ill. Mar. 12, 2021) (citing *Smith v. Berryhill*, 139 S. Ct. 1765, 1779, n. 19 (2019)).

Here, the Court cannot conclude that the Appeals Court abused its discretion in denying Raven's appeal as untimely. Raven asserts that he did not receive notice of the ALJ's decision until it was too late. (Dkt. 13 at 1). As stated above, the ALJ issued his decision on March 25, 2022. (Dkt. 10-2 at 19, R. 19). Raven was required to file his written appeal within 60 days of receiving notice of the decision (presumed to be five days after the notice's date, absent other evidence) or, failing that, to request an extension of the appeals deadline by showing good cause why he could not comply with the original deadline. (*Id.*; *see also* 20 C.F.R. §§ 416.1407, *et seq.*). Plaintiff, however, mailed his request for review of the ALJ's decision on September 28, 2022, (Dkt. 10-2 at 6, R. 6), approximately 187 days after the ALJ's decision was issued. In his request, Raven explained his late filing by the fact that he "had to call SSA office to get a copy of" the ALJ's decision and then mailed his request for appeal "to the Falls Church VA address." (*Id.* at 8, R. 8). Raven listed his Indiana Avenue address as the return address on his request to appeal, which the Court notes is the same address to which the Notice of Decision had been sent. (*Compare id.* at 6, R. 6, *with id.* at 19, R. 19).

In issuing its decision, the Appeals Council considered Raven's "good cause statement." (*Id.* at 4, R. 4). The Council noted, however, that Raven had not submitted any evidence "that earlier attempts were made to file the request for review." (*Id.*). Nor was there any evidence that the ALJ's decision had been mailed to the incorrect address or returned as otherwise undeliverable. (*Id.*). The Appeals Council therefore concluded that Raven had not established good cause. In his appeal to this Court, Raven offers nothing to undermine the facts or law underlying the Appeals Council's conclusion that he failed to show good cause for his untimely appeal. The Court therefore cannot conclude that said decision constituted an abuse of discretion.

### B.  Medical Records

Raven's second argument fares no better. In attacking the merits of the ALJ's decision, Raven asserts that the medical records that the ALJ reviewed were inaccurate or incomplete. (Dkt. 13 at 2). But his argument is undeveloped and, even if the Court were inclined to overlook that problem, the argument fails.

In arriving at this conclusion, the Court finds the *Brown* case instructive. There, a *pro se* plaintiff sought judicial review of the Commissioner's denial of her application for disability benefits. On review, the plaintiff's sole argument in support of remand was that she "disagree[d] with the Commissioner's decision because she is 'unable to work' due to her impairments." *Brown*, 2022 WL 20288615, at *1. In affirming the Commissioner's denial, the Court explained:

> Brown's submissions, however, do not engage the ALJ's
> analysis of the evidence regarding her impairments. She

11

> fails to point to any evidence in the record at the time of the ALJ's decision that the ALJ overlooked or misinterpreted. And it is not the Court's responsibility to do the work for Brown to identify deficiencies in the ALJ's decision.

*Id.* (citing *Jeffers*, 992 F.3d at 653).

What was true in *Brown* is true here. Even when reviewed with the leniency afforded to *pro se* litigants, Raven's argument that the medical records were "inaccurate" and therefore there was "no way" the ALJ "could have made an accurate decision" falls short of "identify[ing] some aspect of the ALJ's decision that is not supported by 'substantial evidence.'" (*Id.*). The only aspects of the record that Raven alleges were inaccurate or incomplete are: (1) the nature of the three vehicular accidents[2] in which he was involved, (s*ee* Dkt. 13 at 1 ("I've been in 2 car accidents . . . and a motorcycle versus deer . . ., it states that I . . . was involved in a motorcycle versus car accident on 3 separate occasions.")), and (2) the fact that he "also had a severe femur fracture" that may result in the need for amputation, (*id.*).

As a preliminary matter, the Court notes that Raven was given an opportunity to address any inaccuracies in the record, which he did:

> ALJ: Did you have a chance to review it?
>
> CLMT: **Yeah, somewhat. Some of it didn't look right though.**
>
> ALJ: And why didn't it look right?
>
> CLMT: **I've never been to a bariatric weight loss center, sir.**

---

[2] Raven does not dispute that the records accurately reflect the *number* of vehicular accidents in which he was involved; he merely disputes which accidents involved motorcycles and which accidents involved cars. (Dkt. 13 at 1).

12

| | | |
|---|---|---|
| ALJ: | | Bariatric weight loss. Okay. I don't remember seeing that, but okay. To the extent, you've never had weight loss surgery? |
| CLMT: | | **No, sir.** |

(Dkt. 10-2 at 42-43, R. 42-43 (emphasis added)). Once that inaccuracy was addressed, Raven confirmed that the remaining records were accurate:

| | | |
|---|---|---|
| ALJ: | | Okay, all right. To the extent that—we'll make sure that gets deleted from your file. Anything else like that that you noticed? |
| CLMT: | | **No, just that.** |

(*Id.* at 43, R. 43 (emphasis added)). This colloquy alone calls into question Raven's claim on appeal. *See Krug v. Saul*, 466 F. Supp. 3d 942, 951 (E.D. Wis. 2020) (finding that plaintiff waived her argument on appeal that the medical records were incomplete when both she and counsel confirmed to the ALJ that the record was complete) (citing *McFadden v. Astrue*, 465 F. App'x 557, 560 (7th Cir. 2012)).

When a claimant is *pro se*, however, as is the case here, the ALJ faces a heightened duty in forming a complete record. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) ("the ALJ is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information"). Although the ALJ is required to ensure the record is complete, "this requirement can reasonably require only so much." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004); *see also Million v. Astrue*, 260 F. App'x 918, 921 (7th Cir.

13

2008) ("a 'significant omission' is usually required before we will find that the ALJ failed to fully develop the record") (citation omitted).

While perfection is not the standard, it is true that an ALJ's decision based on insufficient or incomplete evidence can, at times, warrant reversal and remand: a reviewing court "may at any time order additional evidence to be taken before the Commissioner [], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). Evidence is "new" if it did not exist or was unavailable to the claimant at the time of the hearing. *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (citing *Perkins*, 107 F.3d at 1296). And "[n]ew evidence is 'material' if there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt*, 395 F.3d at 742 (citing *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999)). However, it is the claimant's duty to submit the new, material evidence, or the "specific, relevant facts—such as medical evidence—that the ALJ did not consider." *Nelms*, 553 F.3d at 1098. And the claimant must explain how or why his case was prejudiced by their absence. *Million*, 260 F. App'x at 921.

Here, Raven has not made any showing of new and/or material evidence. He did not submit any new evidence to the Appeals Council when he requested its review; nor did he inform the Appeals Council about new evidence (as he was instructed to do). (Dkt. 10-2 at 7-18, R. 7-18). Raven's brief in support of his request

for judicial review is likewise silent as to (a) what evidence is new and/or missing from the record that should have been considered and (b) how any such evidence is material and "could have affected the outcome of the ALJ's decision." *Schmidt*, 395 F.3d at 742; *see also Krug*, 466 F. Supp. 3d at 952 ("it is notable that Plaintiff did not submit additional records in the months after the hearing and before the ALJ's decision, she did not submit any records to the Appeals Council requesting review of the ALJ's decision, and she did not submit the allegedly missing records to this Court").

Raven's failure to support his conclusory assertion is fatal to his request for reversal and remand. As stated above, Raven must factually support his arguments—the Court will not do so for him.[3] *See Jones*, 2015 WL 1097398, at *4 (the Court will not "scour the record and the law for possible errors or to find support for conclusory assertions or arguments"). Moreover, as previously noted, Raven's own hearing testimony supports a finding that the record in this matter was complete:

| ALJ: | All right. Do the file—do they appear to be up to date? Are there any records that I'm missing? Any recent treatment that you had? |
|---|---|
| CLMT: | **No, they seem to be current.** |

(Dkt. 10-2 at 43, R. 43 (emphasis added); *see also id.* at 27, R. 27 ("Despite repeated attempts to obtain evidence, the record contains little medical evidence from the

---

[3] Even if the Court was inclined to do so, it is apparent that the ALJ considered the fact that Raven was involved in multiple vehicle accidents, suffered a left femur fracture, underwent numerous surgeries, and believed amputation might be necessary (Dkt. 10-2 at 27-29, 46, 52-55; R. 27-29, 46, 52-55).

15

period at issue . . . . Multiple requests for records returned no relevant documents . . . .")). It may be that Raven misunderstood the ALJ's question or mistakenly confirmed that the records were complete. If that was the case though, he was required to explain what evidence was missing and "how the missing records might support [his] case or how []he was prejudiced by their absence." *Million*, 260 F. App'x at 921. He has failed to do so.

V. CONCLUSION

For the reasons detailed herein, the undersigned concludes that the ALJ's decision was supported by substantial evidence and free of legal error and recommends that that ALJ's decision denying Plaintiff benefits be **AFFIRMED**.

Any objections to the Magistrate Judge's Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for such failure.

So RECOMMENDED.

Date: 21 December 2023

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

RAVEN WAYNE WEST HATHAWAY
602 Indiana Avenue
Veedersburg, IN 47987

All ECF-registered counsel of record.